UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| BRODY ENTERPRISES, ) <br> ) <br>                Plaintiff, ) <br>   vs. ) <br> ) <br> MTS PARTNERS, INC., *formerly known as* ) <br> iPrint Technologies Inc., et al. ) <br> ) <br>                Defendant. ) <br> ) | Case No.: 2:11-cv-00489-GMN-LRL <br><br> **ORDER GRANTING DEFENDANT MTS PARTNERS, INC.'S MOTION TO DISMISS [ECF #16]** |

Before the Court is Defendant MTS Partners, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction, Failure to State a Claim and Motion to Transfer Venue. (ECF No. 16). Plaintiff filed a Response (ECF No. 20) and Defendant filed a Reply (ECF No. 24). Defendant argues lack of personal jurisdiction and concedes that this action might have been brought in the Northern District of California because it is subject to personal jurisdiction there. The Court agrees, therefore the Motion to Dismiss for Personal Jurisdiction (ECF No. 16) is GRANTED.

## FACTS

Plaintiff, Brody Enterprises, a Nevada Corporation was a business which sold replacement toner cartridges for laser printers to businesses. (Complaint ¶7, ECF No. 1). Plaintiff entered into a "Customer List Purchase Agreement" with Defendant American Tonerserv Corporation ("ATS") whereby ATS agreed to purchase Plaintiff's customer list and accounts for $800,000. (*Id.* at ¶9). The purchase price was in the form of a promissory note. (*Id.* at ¶10). The security for the promissory note was a Security Agreement whereby the customer list and the accounts represented thereby would serve as collateral for ATS's debt. (*Id.* at ¶11). ATS had trouble making the payments under the agreement from 2006 to 2010, so the parties modified the terms

of the agreement multiple times. (*Id.* at ¶15).

On October 31, 2008, ATS acquired the business and/or assets iPrint Technologies, Inc. ("iPrint, Inc."). (*Id.* at ¶16). ATS formed iPrint Technologies, LLC as a wholly owned subsidiary of ATS. (*Id.* at ¶17). iPrint, Inc. was the entity by which MTS was formerly known. (*Id.* at ¶20). ATS defaulted on its agreement with MTS to purchase the assets of iPrint Technologies and MTS foreclosed on its Security Agreement on December 17, 2010. (*Id.* at ¶22). Given that iPrint Technology, LLC was a wholly owned subsidiary of ATS, Plaintiff alleges that MTS took all of the assets of iPrint, LLC, including the customer lists and accounts which Plaintiff had sold to ATS in 2006. (*Id.*). Plaintiff alleges that MTS further instructed ATS's independent sales partners ("ISPs") in Nevada to continue business as usual for MTS's benefit. Thus MTS took the customer lists and account that was collateral security for the agreement between Plaintiff and ATS. Plaintiff asserts that the list and accounts are its property and MTS wrongfully took them.

Plaintiff alleges five causes of action against MTS: (1) breach of contract, (2) unjust enrichment, (3) tortuous interference with contract, (4) conversion, and (5) unfair competition/misappropriation of trade secrets.

## DISCUSSION

**A.     Personal Jurisdiction**

A defendant may move to dismiss for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). Personal jurisdiction over a nonresident defendant is established when a two-part test is satisfied. First, there must be personal jurisdiction under the laws of the state where it is asserted. *Chan v. Society Expeditions, Inc.*, 39 F.3d 1398, 1404 (9th Cir. 1994). Second, the exercise of jurisdiction must satisfy due process. U.S. Const. amend XIV, 1; *Chan*, 39 F.3d at 1404–05.

For a non-resident defendant, the assertion of jurisdiction is constitutionally proper under the Due Process Clause of the Fourteenth Amendment only where there are continuous and systematic contacts with the forum state (general jurisdiction), *Bauman v. DaimlerChrysler Corp.*, 579 F.3d 1088, 1094 (9th Cir. 2009), or when there are sufficient minimal contacts with the forum state such that the assertion of personal jurisdiction does not offend traditional notions of fair play and substantial justice (specific jurisdiction), *Int'l Shoe Co. v. State of Wash., Office of Unemployment Compensation & Placement*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

### 1. General Jurisdiction

General personal jurisdiction exists only when a defendant's forum activities are so substantial or continuous and systematic that defendant may be deemed present in the forum and subject to suit over claims unrelated to its forum activities. *Brand v. Menlove Dodge*, 796 F.2d 1070, 1073 (9th Cir. 1986). A defendant whose contacts with a state are "substantial" or "continuous and systematic" can be brought into court in that state in any action, even if the action is unrelated to those contacts. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415, 104 S.Ct. 1868, (1984). The standard for establishing general jurisdiction is "fairly high," *Brand v. Menlove Dodge*, 796 F.2d 1070, 1073 (9th Cir.1986), and requires that the defendant's contacts be of the sort that approximate physical presence. *See Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1331 (9th Cir.1984). Factors to be taken into consideration are whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there. *See Hirsch v. Blue Cross, Blue Shield of Kansas City*, 800 F.2d 1474, 1478 (9th Cir.1986).

Plaintiff argues however that the Court does have general jurisdiction over Defendant based upon Defendant's employment of Nevada based Independent Sales Partners ("ISP"). When MTS foreclosed on its Security Agreement with ATS it acquired Tony Naples and Joshua

1  Greenrock who had been ISPs for Plaintiff and ATS.  MTS contacted the Nevada ISPs and
2  informed them it was to be business as usual but that the sales were now for MTS. (Greenrock
3  Affidavit, Plaintiff's Ex. 3, ECF 20-3).  Based on the ISPs sales in Nevada, Plaintiff argues that
4  Defendant is subject to general personal jurisdiction because they made sales, solicited and
5  engaged in business of the state.

6  Defendant argues that is has less than two (2%) percent of its customers located in
7  Nevada.  It maintains that these customers were obtained through nationwide sales campaigns,
8  thus they were not directly aimed at Nevada.  Defendant is not a Nevada corporation, does not
9  have a physical presence in Nevada and does not maintain offices in the state, similar to the
10 Defendants in *Helicopteros*.

11 Defendant argues that similar to *Boaz v. Boyle & Co.*, 40 Cal.App. 4th 700 (Cal 1995) the
12 nationwide solicitation of business is not sufficient to demonstrate general personal jurisdiction.
13 In *Boaz,* the nonresident defendant had limited contacts with the forum state that consisted of
14 targeting mailers to physicians, advertising principally in national medical publications, and
15 deriving 9% of its sales from the forum's physicians. *Id.* at 715-17.  Based on those contacts, the
16 court found that the defendant's level of activity in the forum did not justify the assertion of
17 general jurisdiction. *Id.* at 717.

18 The Court finds that Plaintiff has not met the high burden of showing the court's general
19 personal jurisdiction over Defendant.  Plaintiff claims that the Defendant makes sales, solicits or
20 engages in business in Nevada.  However its only argument to support their claim is that the
21 ISPs were located in Nevada.  Plaintiff does not allege that these ISPs actually sold to Nevada
22 residents.  Also, the Court takes the circumstances of the contacts into account.  Defendants
23 'acquired' the ISPs because ATS defaulted on their agreement.  The interim status to keep the
24 ISPs working while deciding what to do with the property from ATS does not establish a
25 continuous and systematic presence in the state.  The burden to establish general personal

jurisdiction is high, and Plaintiff has not met that burden.

## 2. Specific Jurisdiction

The Ninth Circuit employs a three-part test to determine whether the exercise of specific jurisdiction satisfies the requirements of due process: (a) the defendant must have purposely availed itself of the privilege of conducting activities in the forum; (b) the plaintiff's claim must arise out of that activity; and (c) the exercise of jurisdiction must be reasonable. *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 381 (9th Cir. 1990).

### a. Purposeful Availment or Direction

Under the first prong of the Ninth Circuit test the defendant must have either (1) "purposefully availed" himself of the privilege of conducting activities in the forum, or (2) "purposefully directed" his activities toward the forum. *Schwarzenegger v. Fred Martin Motor Company*, 374 F.3d 797, 802 (9th Cir. 2004). A purposeful availment analysis is most often used in suits sounding in contract while a purposeful direction analysis is most often used in suits sounding in tort. *Id.* While one of Plaintiff's causes of action is breach of contract the remaining causes of action sound it tort, therefore the court will apply the purposeful direction analysis.[1]

Purposeful direction is determined under the "effects" test of *Calder v. Jones*, 465 U.S. 783, 789–90 (1983). "Under *Calder* the 'effects' test requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at 803. Cases following *Calder* have explained that the "effects" test is not satisfied merely by a foreign act with foreseeable effects in the forum; there must be "something more"-namely, "express aiming" at the forum state. *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000) (citing *Calder*, 465 U.S. at 789).

---

[1] Further, Defendant used this analysis and plaintiff did not object to its use or offer a different test in its Response.

In this case the intentional act is MTS's alleged taking and using of assets (customer list) which Plaintiff alleges rightfully belongs to it. Defendant argues that the second prong however is missing. MTS expressly aimed its alleged act of taking Plaintiff's assets when it foreclosed against ATS in California. Thus, any express aiming would justify a California forum and not a Nevada forum. Finally, Defendant argues that there is nothing to indicate that in foreclosing on the Security Agreement against ATS, Defendant could have foreseen it would cause harm to Plaintiff in the forum. Defendant claims that it was not aware of the Security Agreement between Plaintiff and ATS.[2]

Plaintiff argues that Defendant's intentional act was aimed at the Nevada forum because Defendant "loaned" money to Nevada ISP Joshua Greenrock to cover the commissions owed for sales in December 2010, which occurred before Defendant foreclosed on ATS's business. Sometime after the "loan", Mr. Greenrock was contacted by Arnold Brody, of Brody Enterprises. Mr. Brody told Mr. Greenrock that the old accounts belonged to Brody Enterprises because ATS had failed to pay the money owed under their contract. Thus, Mr. Brody told Mr. Greenrock to allocate the sales he made to Mr. Brody and not Defendant. When Defendant discovered this, they fired Mr. Greenrock. Subsequently Defendant sued Mr. Greenrock in Las Vegas Justice Court to collect on the 'loan' it had given to Mr. Greenrock. Plaintiff argues that Defendant's action in employing and loaning money to Mr. Greenrock and finally in pursuing legal action against Mr. Greenrock demonstrates an intentional act aimed at the Nevada forum. By pursuing Mr. Greenrock for the 'loan', Defendant was aware that harm would occur in the forum.

    **b. Activity in the Forum State**

The second prong of the Ninth Circuit's test to determine whether the exercise of specific jurisdiction satisfies due process is that the plaintiff's claim must arise out of that activity

---

[2] While Plaintiff does allege that Defendant knew of the agreement, Plaintiff offers no facts to establish that Defendant knew.

conducted in the forum state.

Plaintiff argues that Defendant has submitted itself to a forum's jurisdiction by filing a suit in that forum for activities that arise out of or are related to the same transaction. Plaintiff argues that Defendant's suit against Mr. Greenrock in Nevada is based on Mr. Greenrock's actions to fill orders on behalf of Plaintiff instead of Defendant. Defendant cannot now argue that it is not subject to personal jurisdiction in Nevada in connection with the misappropriation of the accounts from ATS.

Plaintiff cites to three cases for the proposition that a defendant submits itself to a forum's jurisdiction by filing a suit in that forum for activities that arise out of or are related to the same transaction. *See General Contracting & Trading Co., LLC v. Interpole, Inc.*, 940 F.2d 20, (1st Cir. 1991) (Third-party defendant submitted itself to court's personal jurisdiction in first suit by instituting a second suit against third-party plaintiff in connection with same transaction); *Threlkeld v. Tucker*, 496 F.2d 1101 (9th Cir. 1974) (Ex-husband had submitted himself to court's personal jurisdiction because of previous filings against ex-wife in the forum's state courts, in addition to other minimum contacts with the forum); *Larson v. Galliher*, No. 2:06-cv-1471-RCJ-GWF, 2007 WL 81930 (D. Nev. January 5, 2007)(Defendant impliedly consented to the jurisdiction of the forum by filing an earlier action in the forum against the plaintiff involving essentially the same set of operative facts).

Under Defendant's argument there was no activity aimed at the forum state thus there can be no claim arising out of that activity. This court agrees that the cases cited by Plaintiff and this suit are distinguishable. First of all, in the cases cited the parties were parties to both suits. Plaintiff is not a party to the suit initiated by Defendant against Mr. Greenrock. Second, the facts of this suit are markedly different and do not involve the same basic claims, transactions, or nucleus of operative facts as compared to the suit against Mr. Greenrock. For example in the state court case against Mr. Greenrock the facts regarding terms of the loan and whether or not

Mr. Greenrock was misappropriating sales from Defendant to Plaintiff or vice versa need to be examined.  In this case, the operative facts revolve around the Security Agreement and whether or not Defendant has any rights to the customer list or if it rightly belongs to Plaintiff.  Mr. Greenrock's liability in regards to the repayment of the "loan" is not an operative fact that will change or determine who rightfully owns the customer list at issue.  For this reason, this Court does not have specific personal jurisdiction over Defendant.

### c.     Reasonableness

Finally, under the third prong of the Ninth Circuit's specific personal jurisdiction test, Plaintiff must demonstrate that the exercise of jurisdiction is reasonable.  The five factors to consider when determining if the exercise of personal jurisdiction would be unreasonable are: (1) the burden on the defendant; (2) the forum State's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *World-Wide Volkswagen Corporation v. Woodson*, 444 U.S. 286, 292 (1980).

Plaintiff does not address these five factors in its Response; however, there is typically a presumption of reasonableness if the plaintiff has proven specific jurisdiction.  In this case Plaintiff has not done so. Defendant argues that there is a burden placed on it to defend in Nevada because it does not maintain a physical presence in Nevada.  It would be a significant inconvenience to Defendant given that its employee's, ISPs and records are not in Nevada. Therefore, the first factor weighs in favor of the Defendant. The second factor would weigh in favor of jurisdiction in Nevada because Plaintiff is a Nevada corporation and thus the state has an interest in its own businesses.  However, since the harm occurred outside the state this factor should be neutral. The third factor weighs in favor of adjudicating the case in Nevada as Plaintiff is a Nevada corporation.

The fourth factor focuses on the location of evidence and witnesses. Defendant argues that more than 40 potential witnesses are located in California. All documents, information, computers, servers and other evidence related to Defendant are located in California. Thus the most relevant evidence is probably located in California and not Nevada. Plaintiff's witnesses and evidence is most likely in Nevada. However given technological advances in communication and transportation this factor is probably at best neutral.

Finally, the fifth factor examines the shared interest of the several states in furthering fundamental substantive social policies. Neither party has addressed whether Nevada has a special substantive social policy that would be affected by this case. Therefore, this last factor is neutral as well.

There is usually a presumption of reasonableness when the Plaintiff satisfies the first two prongs. There is no presumption in this case. Defendant has shown that the exercise of personal jurisdiction would be unreasonable and Plaintiff offers no argument that it would be reasonable. Plaintiff also failed to make arguments against Defendant's failure to state a claim and motion to transfer venue arguments.

## CONCLUSION

Defendant MTS Partners, Inc.'s Motion to Dismiss (ECF 16) is hereby **GRANTED** and Plaintiff's Complaint (ECF 1) is hereby **DISMISSED without prejudice** for lack of jurisdiction over Defendant MTS.

DATED this 23rd day of June, 2011.

_____
Gloria M. Navarro
United States District Judge